The Progressive Clay Company, complainant,

*v.*

The Township of Springfield in the county of Union,
defendant-respondent.

———

E. J. Flaherty Contracting Company, Incorporated,
defendant-appellant,

*v.*

Constitution Indemnity Company of Philadelphia et al.,
defendants.

[Submitted May 26th, 1933.   Decided September 27th, 1933.]

———

On appeal from a decree of the court of chancery advised
by Vice-Chancellor Fielder, who filed the following opinion:

"A contract was entered into May 14th, 1929, by E. J.
Flaherty Contracting Company with the township of Spring-
field for the construction of a sewerage system in said town-
ship.   June 7th, 1930, the bill of complaint in this cause
was filed against the township, the contractor and others for
the enforcement of a lien claimed by the complainant for
material furnished the contractor and used in said sewer con-
struction and the bill alleges, among other things, certain

specific sums due from the township to the contractor. Subpœna to answer was issued and served forthwith on the contractor but it did not file its answer until September 24th, 1930, and the answer is merely a reply to the allegations of the bill. It denies that the whole work to be performed by the contractor has not been completed; it admits that the municipality has not passed a resolution accepting the work; it does not challenge the amount of the debt alleged to be due from the township to the contractor and it contains no statements or intimation that the contractor's claim against the municipality is in excess of the amount alleged in the bill. Other lien claimants were added subsequently as defendants and the cause came on for hearing January 20th, 1931. On that day an amended answer was filed by the contractor containing practically the same reply to the bill as in the original answer and further alleging that the township, through its engineer, ordered the contractor to make repairs, or extra work in addition to the original contract. The amended answer specifies such repairs and extra work generally but omits to state the value thereof or to make any claim with respect thereto. The hearing of the cause was continued to April 2d, 1931, and on that day the contractor filed a second amended answer, containing no new matter as to the bill but setting up a claim against the township for repairs and extra work ordered through the township engineer, damages for delays caused by the engineer and loss of profit on rock excavation, specifying that various claims in detail with the value of each item, the whole making a total of $109,431.34. On this answer, in the nature of a counter-claim, the township joined issue and set up two claims against the contractor, one for liquidated damages in accordance with the terms of the contract for delay in prosecuting the work, amounting to $8,750, and the other for $2,325 damages for failure to perform certain work under the contract. The case must be confined to the issues presented by the pleadings.

"April 6th, 1931, an interlocutory decree was entered adjudging the amounts due the complainant and the several lien claimants and directing payment of the same out of money

admitted to be due under the contract and held by the township. The decree referred it to a special master to take such testimony as may be required on the issues involved between the contractor and the township and to ascertain and report the amount due from the township to the contractor under said contract and the amount due from the contractor to the township and to hear and determine all other issues between the township and the contractor, raised by the pleadings.

"The special master's report is dated January 21st, 1932, was filed the following day and is now before me on two motions, one by the township for confirmation and the other by the contractor for a re-reference to the master with directions to permit claim against the township.

"It appears by the report that the parties have stipulated $9,747.42 is due from the township to the contractor according to the terms of the contract, excluding the contractor's claim for extra work and damages and excluding the township's claim for liquidated damages and for the contractor's failure to fully perform the contract.

"On the contractor's claim for extra compensation and damages, the master concluded to take no testimony for the reason that it appeared to him that because of the contract provisions the contractor could not succeed in maintaining such claim, even if it could produce proof of extra work performed and damages sustained and he dismissed that part of the contractor's claim. I think the master was right. He held in abeyance the claim of the township against the contractor until an appeal could be had, or other determination made on the contractor's claim against the township.

"Referring to the contract, provisions will be found therein which govern the contractor's claim for extra work and damages. They are that the contractor shall perform work not covered by the contract when ordered in writing by the engineer and if compensation is claimed for extra work not so ordered, or for damages sustained, it shall within one week after beginning such work or of sustaining such damage, make a written statement thereof to the engineer and shall on or before the fifteenth day of the month succeding, file

with the engineer an itemized statement of the details and amount of such work or damage, otherwise its claim for compensation shall be forfeited and invalid.

"At the first hearing before me it was stated by counsel for the township and not denied by counsel for the contractor, that up to that time the contractor had presented or filed no claim against the township for extra work or damages. The contractor's answer filed in the cause admits that it received no written order for the extra work alleged to have been performed and it is not claimed in the answer or in the brief filed for the contractor, that the contractor at any time made a written statement of its extra work or damage claims; on the contrary, at a hearing before the master, counsel for the contractor stated in answer to a question by the master, that the engineer had waived the making of such statement and at another hearing the master stated he understood the contractor's position to be that the engineer had given it verbal orders for the replacement work, extra work and alterations and had waived the requirement that all such work should be ordered in writing and also the various other contract requirements with reference to payment for such extra work and that the contractor's contention was that the engineer could give it oral directions, which the contractor was bound to follow and upon which the township was liable to pay and the master instructed counsel for the contractor to call his attention to any omission or error of fact in his statement. The record fails to show that the master's statement was questioned and it appears from the brief filed for the contractor that the situation with regard to the contractor's claim for replacements, extra work, alterations and damages is as the master stated.

"Upon the subject of waiver, the contract provision is that no order or certificate by the engineer shall operate as a waiver of any provision of the contract and that no waiver of any of the terms or provisions of the contract shall be made by or in behalf of the township, except by a resolution duly adopted by its governing body and spread upon its minutes.

The contractor does not contend that any resolution of waiver is to be found in the township's minutes.

"The contractor makes no charge of fraud against the township and urges its right to recover on this part of its claim solely because it received verbal orders from the engineer who told it to wait until the completion of its contract before making its claim for extra work and damages. It may be noted that the contractor's answer filed September 24th, 1930, denied an allegation or inference contained in the bill of complaint filed June 7th, 1930, that the work under the contract had not been completed, yet up to the time of filing that answer the contractor had filed no claim with the township for the items for which it now seeks to be compensated.

"The remainder of the contractor's claim is in the nature of damages sustained because a lesser quantity of rock was encountered in the work than the quantity which the contractor says the contract led it to expect. Its second amended answer alleges that whereas the specifications attached to the contract state that fifteen thousand cubic yards of rock excavation would be found in connection with the work, there were actually but three thousand cubic yards of rock; that if the quantity stated in the specifications had been found, the contractor could have used some of it in connection with the contract requirements but not being there, the contractor was forced to purchase six thousand five hundred yards of crushed rock and lost profit on nine thousand cubic yards of rock.

"The contract provisions to be read in connection with this part of the contractor's claim are as follows: that the contractor has examined the site of the work and is assumed to have looked over the ground before bidding and to be acquainted with all existing conditions; that the estimated quantities of work stated in the specifications are only approximate and for the purpose of comparing on a uniform basis, the bids offered for the work; that the township is not to be held responsible if, in the construction of the work, any of the quantities should be found only approximately correct; that the contractor will not dispute said estimated quantities as a means of escaping its bid; that the contractor will make

no claim for anticipated profit, or for loss of profit, because of a difference between the quantities of the various classes of work actually furnished and the estimated quantities.

"The contractor's bid was for a unit price per cubic yard of rock removal, and it made its bid and entered into the contract knowing it was required to inspect and acquaint itself with such physical conditions as might be encountered in the work and with knowledge that the amount of rock excavation stated was not guaranteed, but was estimated and approximate. With such duty and knowledge it bound itself to make no claim for anticipated profit, or loss of profit, if the amount of rock removed should prove to be less than the estimated quantity. It is not claimed that the township had any better means of ascertaining the exact amount of rock excavation required than had the contractor and in view of these contract provisions the master properly refused to receive evidence which might tend to show that the amount of rock excavation was less than the estimated quantity and that the contractor anticipated lost profit on a greater quantity of rock, or was forced to purchase crushed rock because it did not find sufficient rock on the job to meet the contract requirements.

"The contract provisions to which reference has been made are entirely reasonable and are as important as any other provision therein. They were intended to define and limit the rights and liabilities of the parties to the contract and particularly to safeguard the interest of property owners ultimately liable to be assessed for the cost of the work and to protect the township against what in this case is a long list of claims of a controversial nature, for a total sum which is twenty-five per cent. in excess of the whole amount certified by the engineer to be due the contractor under the contract, the validity of which claims, except for these contract provisions, must depend upon the uncertainty of parol testimony. As the master has stated, much time might be consumed and much expense incurred in taking testimony to prove each item of the contractor's claim, only to result in the rejection of the claim upon the grounds stated by the master. I am in

accord with the master in his conclusions and shall grant the motion to confirm his report. This will enable the contractor, if it desires, to obtain the opinion of the appellate court on the questions of law involved and thus aid in bringing to final determination, a controversy between the township and the contractor which has been unduly long drawn out. In any event the matter must ultimately go back to the master on the question whether the township has a valid claim against the contractor for damages and for failure to perform the contract."

*Mr. James A. Hamill (Mr. Nicholas S. Schloeder,* of counsel), for the appellant.

*Mr. Charles W. Weeks,* for the respondent the township of Springfield in the county of Union.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons expressed in the opinion delivered by Vice-Chancellor Fielder in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ.    14.

*For reversal*—None.